Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 21-2002

G.P.,

Petitioner,

v.

MERRICK B. GARLAND, ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Gelpí, Howard, and Thompson,
Circuit Judges.

SangYeob Kim, with whom Gilles Bissonnette, American Civil
Liberties Union of New Hampshire, and New Hampshire Immigrants'
Rights Project, were on brief for petitioner.
Jennifer P. Lyon, Courtney H.G. Herz, and Sheehan Phinney
Bass & Green, PA on brief for New Hampshire Legal Assistance and
the University of Maine School of Law Refugee and Human Rights
Clinic, amici curiae.
Adam Gershenson, Alex Robledo, Angela Dunning, Marc Suskin,
Robby L.R. Saldaña, and Cooley LLP on brief for Former Immigration
Judges and Former Members of the Board of Immigration Appeals,
amici curiae.
Kristin Macleod-Ball and Trina Realmuto on brief for the
National Immigration Litigation Alliance, Center for Gender &
Refugee Studies, and Political Asylum/Immigration Representation
Project, amici curiae.
Richard Kelley, Trial Attorney, Office of Immigration

Litigation, Civil Division, U.S. Department of Justice, with whom
<u>Brian Boynton</u>, Principal Deputy Assistant Attorney General, Civil
Division, and <u>Melissa Neiman-Kelting</u>, Assistant Director, Office
of Immigration Litigation, were on brief for respondent.

---

July 13, 2023

---

GELPÍ, **Circuit Judge**.  Petitioner G.P.[1] seeks review of the Board of Immigration Appeals' ("BIA") decision affirming the denial of his application for protection under the Convention Against Torture ("CAT").  We first address our jurisdiction to hear this matter before turning to the merits.  Ultimately, because the immigration judge's ("IJ") decisions -- giving limited weight to the expert witness testimony and disregarding the expert's opinion that G.P. faced a high risk of torture -- were not supported by substantial evidence, we grant G.P.'s petition, and thus vacate and remand for further proceedings consistent with this opinion.  As such, we limit our discussion of G.P.'s additional claims accordingly.

### I. Background

### A. G.P.'s Presence in the United States

G.P., a native and citizen of the Dominican Republic, first entered the United States without inspection in 1993.  He was subsequently convicted of trafficking cocaine, served a seventeen-year prison sentence, and was removed to the Dominican Republic in 2011.  G.P. reentered the United States -- again, without inspection -- in 2017 and shortly thereafter began selling drugs on behalf of Sergio Martinez ("Martinez"), the leader of a large fentanyl trafficking organization in New England (the

---

[1]  On January 14, 2022, this court granted the Petitioner's motion to proceed under the pseudonym "G.P."

"Martinez Group").  In 2018, G.P. and Martinez, along with over thirty others, were arrested and charged for their involvement in the drug trafficking conspiracy.

G.P. pled guilty to conspiracy to distribute and to possess with the intent to distribute fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 846, and cooperated with the government against Martinez.  For his cooperation, G.P. received a thirty-six-month prison sentence, while Martinez, who decided to plead guilty during G.P.'s testimony, was sentenced to forty-five years of imprisonment.  Following the completion of his sentence (during which two inmates attacked G.P. on behalf of Martinez), the Department of Homeland Security ("DHS") placed G.P. in proceedings to withhold his removal from the United States based on his reasonable fear of returning to the Dominican Republic.

### B. IJ's Proceedings

Before the IJ, G.P. sought deferral of removal to the Dominican Republic under CAT.[2]  G.P. claimed that, were he to return, it is more likely than not that he would be tortured by: (1) Dominican public officials unconnected to the Martinez Group, (2) Dominican public officials connected to the Martinez Group, (3) Dominican public officials connected to the Martinez Group but

---

[2]  G.P. conceded that he was ineligible for other relief, such as withholding of removal by statute or under CAT, because of his two drug-related convictions.

acting in a private capacity, and (4) private actors hired or arranged by the Martinez Group.  G.P. supported his petition for deferral by testifying; by calling Dr. David Brotherton, Professor of Sociology and Criminology at John Jay College of Criminal Justice, City University of New York ("Brotherton"), as a Dominican Republic country conditions expert; and by submitting other documentary country conditions evidence.

During his testimony, G.P. explained that relatives introduced him to Martinez in the Dominican Republic in 2016 and that Martinez offered him a position within his Massachusetts-based drug trafficking organization.  G.P. began selling drugs for Martinez in the New England area shortly after coming to the United States in 2017.  Specifically, G.P. sold fentanyl to Martinez's "important clients" -- who came from out of state to buy drugs in larger quantities -- until his arrest in April 2018.

G.P. emphasized that he feared retaliation in the Dominican Republic stemming from his cooperation against the Martinez Group.  G.P. explained that he was a "star witness" when he testified in open court against Martinez and that he told the government everything he knew about the Martinez Group's operation, including its leader, workers, and suppliers (Dominicans and a Mexican cartel).  G.P. described how, while serving his sentence, two fellow inmates beat and stabbed him in

retaliation for the harm he caused to Martinez. He testified that he feared returning to the Dominican Republic because he gave significant information to the Drug Enforcement Administration ("DEA") about many people, and he believed that either those who were directly involved, or higher ups, will try to retaliate for his cooperation if he returns. As to the Martinez Group's ability to locate and harm him in the Dominican Republic, G.P. explained that many of them (presumably meaning Martinez Group members) are from his hometown, know him, and that it is easy to find information or hire a hitman in the Dominican Republic if you have money. As to his fear of torture as a removed criminal, G.P. testified that even "good" police officers -- those who are not tied to cartels -- will not protect him because he is a criminal.

G.P. also offered Brotherton's testimony, as a Dominican Republic country conditions expert, in support of his application for deferral of removal under CAT ("CAT claim"). Brotherton testified extensively about the treatment removed criminals face in the Dominican Republic -- during their initial detention upon being returned to the country and after being processed and released -- as well as about extrajudicial killings by police, government corruption by cartels, and the consequences that members of criminal organizations face for cooperating with the government. Additionally, G.P. submitted documentary support for his claim, including country conditions evidence consisting of the

2018 and 2019 Department of State Dominican Republic Human Rights Reports, reports from Amnesty International and the Immigration and Refugee Board of Canada, and various news articles.

After considering "all the evidence and testimony in the record," the IJ concluded that G.P. had not established that it was more likely than not that he would be tortured by, or with the acquiescence of, the government of the Dominican Republic. Despite finding that both G.P. and Brotherton testified credibly, the IJ found that G.P.'s fear of torture as a removed criminal and at the hands of corrupt government officials/private actors was too speculative because G.P. failed to prove "that each link in [his] hypothetical chain of events leading to his alleged harm . . . is more likely than not to occur." The IJ acknowledged Brotherton's opinion that G.P. faced a "high risk" of being tortured if returned to the Dominican Republic but ultimately discounted that opinion based on Brotherton's lack of familiarity with the Martinez Group, its connection to government officials in the Dominican Republic, and because of Brotherton's agreement with a quote from his 2011 book, which states: "I couldn't honestly say that torture is something deportees should expect." Finding G.P.'s evidence lacking, the IJ denied his CAT claim.

### C. BIA Appeal

G.P. appealed the IJ's denial of his CAT claim to the BIA, alleging that the IJ erred by: (1) giving reduced weight to

Brotherton's testimony, (2) concluding that G.P. had not met his burden of establishing the requisite risk of torture from the Martinez Group, (3) concluding that G.P. had not met the requisite risk of torture from Dominican officials, (4) failing to properly aggregate all sources of torture, and (5) violating G.P.'s due process rights by failing to fairly consider the evidence.  G.P. also challenged his order of removal based on a defective record of the immigration proceedings.

The BIA concurred with the IJ that G.P. failed to establish that it was more likely than not that each link in the chain leading to his alleged torture -- as a removed criminal or as a government cooperator against Martinez -- would occur.  With respect to Brotherton, the BIA upheld the IJ's decision to assign his testimony limited weight because it was "based on limited direct knowledge and independently informed contemporaneous observations."  The BIA also concluded that Brotherton's opinion, that G.P. faced a "high risk" of torture, was properly discounted by the IJ because of the "speculative" nature of the testimony, Brotherton's lack of familiarity with the Martinez Group, and the IJ's reasonable interpretation of the quote from Brotherton's

book.  Finding no clear or legal error, the BIA affirmed the IJ's denial of G.P.'s CAT claim.  This petition for review followed.

## II. Jurisdiction

We pause to address a matter of import before delving into the substance of G.P.'s case.  After we heard oral argument, we requested supplemental briefing to address whether we have jurisdiction over G.P.'s petition where he filed it within thirty days of the BIA's affirmance of the IJ's denial of his application for CAT relief, but more than thirty days after DHS reinstated his order of removal.  See 8 U.S.C. § 1252(b)(1) (providing that a "petition for review must be filed not later than 30 days after the date of the final order of removal"); § 1252(b)(9) (providing that "judicial review" of any action to remove a noncitizen from the United States "shall be available only in judicial review of a final order"); Nasrallah v. Barr, 140 S. Ct. 1683, 1691 (2020) (stating CAT orders are distinct from final orders of removal).  Before we could decide this question, the Supreme Court issued Santos-Zacaria v. Garland, 143 S. Ct. 1103 (2023), in which the Court held that § 1252(d)(1) -- providing that judicial review of a final order of removal is available only if the noncitizen "has exhausted all administrative remedies available to the [noncitizen] as of right" -- is a nonjurisdictional claim-processing rule.  Id. at 1116.  We granted the government's request to provide additional supplemental briefing about the

- 9 -

effect of <u>Santos</u>-<u>Zacaria</u> on this case.  The parties' subsequent
filings included three points of agreement: (1) § 1252(b)(1) is
not jurisdictional and is subject to waiver and forfeiture; (2) the
government waived any objection to the timeliness of G.P.'s
petition for review; and (3) this court should decide G.P's
petition on the merits.  It is on these bases that we presume
jurisdiction, without deciding the underlying questions, and
proceed to the merits.  We are careful to leave the issues of when
§ 1252(b)(1)'s thirty-day deadline starts running and whether the
rule is jurisdictional for another day, when these are properly
disputed by the parties.  With that out of the way, we turn to the
merits of G.P.'s petition.

### III. Standard of Review

"We review the BIA's findings of fact [on a CAT claim]
under the 'substantial evidence' standard." <u>Romilus</u> v. <u>Ashcroft</u>,
385 F.3d 1, 5 (1st Cir. 2004) (quoting <u>Guzman</u> v. <u>INS</u>, 327 F.3d 11,
15 (1st Cir. 2003)).  Where the BIA's decision is "supported by
reasonable, substantial, and probative evidence on the record
considered as a whole," the decision must be upheld. <u>Id.</u> (quoting
<u>INS</u> v. <u>Elias-Zacarias</u>, 502 U.S. 478, 481 (1992)).  Because this is
a "deferential standard" of review, the BIA's determination may
only be disturbed if "the record evidence would compel a reasonable
factfinder to make a contrary determination." <u>Aguilar-Solis</u> v.

INS, 168 F.3d 565, 569 (1st Cir. 1999).  Questions of law, however,

are reviewed de novo.  Romilus, 385 F.3d at 5.

Typically, we review only the BIA's decision.  Id.  But

where, like here, the BIA "adopts portions of the IJ's opinion, we

review those portions of the IJ's opinion that the BIA has

adopted."  Id.  And when, like here, the BIA "both adopts the

findings of the IJ and discusses some of the bases for the IJ's

decision, we have authority to review the decisions of both the IJ

and the BIA."  Id. (quoting Chen v. Ashcroft, 376 F.3d 215, 222

(3d Cir. 2004)); see also Aguilar-De Guillen v. Sessions, 902 F.3d

28, 32 (1st Cir. 2018) (When "the BIA adopts and affirms an IJ's

decision, we review the IJ's decision to the extent of the

adoption, and the BIA's decision as to any additional ground."

(quoting Sunoto v. Gonzales, 504 F.3d 56, 59-60 (1st Cir. 2007))).

## IV. Discussion

On appeal, G.P. raises several claims of error: (1) that

the IJ and BIA erred by requiring evidence of harm to other

government witnesses in the Dominican Republic; (2) that the BIA

erred by failing to address G.P.'s argument that the IJ erred by

not providing G.P. an opportunity to explain his inability to

obtain corroborating evidence that other government witnesses were

harmed in the Dominican Republic; (3) that the BIA erred by failing

to address G.P.'s argument about Martinez's connections to

Dominican Republic law enforcement; (4) that the IJ and BIA erred

by failing to aggregate all sources of torture "in assessing the ultimate probability of torture in the Dominican Republic"; (5) that the BIA erred by engaging in impermissible factfinding as to the basis for Brotherton's opinion and by disregarding facts that the IJ accepted; (6) that the IJ and BIA erred in giving reduced weight to Brotherton's expert testimony; (7) that, contrary to the IJ's and BIA's decisions, the evidence in the record compels the conclusion, under the aggregate standard, that G.P. established the requisite risk of torture for a CAT claim; and (8) that the BIA erred by concluding that the Department of State's 2020 Dominican Republic Human Rights Report would not change the analysis or outcome of G.P.'s CAT claim.  The Government contests each of G.P.'s claims and argues that G.P. waived his challenges to the BIA's order affirming the denial of his CAT claim based on his status as a removed criminal, as well as to impermissible factfinding by the BIA.  Because, for the reasons discussed infra, we conclude that the IJ unjustifiably limited and disregarded Brotherton's testimony -- impacting the IJ's conclusion as to G.P.'s risk of harm both as a removed criminal and government cooperator -- we vacate and remand for further proceedings consistent with this opinion.  As such, we decline to

address the other issues raised in G.P.'s petition and take no position on the government's waiver claims.

### A. Limited Weight Given to Brotherton's Testimony

G.P. contends that the IJ's decision to give "limited weight" to Brotherton's testimony was not supported by substantial evidence. Here, after a "thorough voir dire," the IJ qualified Brotherton as an expert witness on country conditions in the Dominican Republic relating to the lives of removed noncitizens and organized crime. Despite concluding Brotherton testified credibly, the IJ nevertheless gave reduced weight to Brotherton's testimony because of "his lack of recent first-hand knowledge, research, or connections in the Dominican Republic." The IJ found that:

> The last time Dr. Brotherton was in the Dominican Republic was in 2014, where he conducted interviews with 10 deportees. Before that, the majority of his interviews took place in 2009 in preparation of his book that was published in 2011. The last time he spoke with a deportee who was in the Dominican Republic was in 2019. His most recent conversations with Dominican officials were in March 2019, with a police officer, and in 2016 when government officials visited Dr. Brotherton's university.

The BIA affirmed the IJ's decision to give limited weight, concluding that the IJ "did not require first-hand knowledge of the facts underlying the expert opinion" but rather "acknowledged the expert witness's testimony and afforded due

evidentiary weight where appropriate and where his opinion was based on limited direct knowledge and independently informed contemporaneous observations."  Because the BIA adopted the IJ's opinion as to Brotherton with little additional analysis, we primarily review the IJ's findings.  See Romilus, 385 F.3d at 5.

"The question of what probative value or weight to give to expert evidence is a determination for the [IJ] to make as the fact finder."[3] Matter of M-A-M-Z-, 28 I. & N. Dec. 173, 177 (B.I.A. 2020); see also 8 C.F.R § 1003.1(d)(3)(i); Xian Tong Dong v. Holder, 696 F.3d 121, 127 (1st Cir. 2012) (explaining that where evidence as a whole is "a mixed bag," IJs have discretion over where to accord substantial weight).  Before assigning significant weight to expert testimony, the IJ "should determine that the witness's testimony is probative and persuasive regarding the key issues in dispute in the case."  Matter of J-G-T, 28 I. & N. Dec. 97, 103 (B.I.A. 2020).  For an expert's opinion to be persuasive, "a reliable factual or evidentiary basis for his or her

---

[3] Amici urge us to provide guidance to IJs and the BIA by establishing a uniform standard for evaluating expert witness testimony.  Overlooking the fact that G.P. did not raise this argument in his petition for review, we believe that the Supreme Court's decision in Garland v. Ming Dai precludes us from considering amici's request.  141 S. Ct. 1669, 1677 (2021) ("Congress has carefully circumscribed judicial review of BIA decisions. . . . [I]t is long since settled that a reviewing court is 'generally not free to impose' additional judge-made procedural requirements on agencies that Congress has not prescribed and the Constitution does not compel." (quoting Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc., 435 U.S. 519, 524 (1978))).

conclusions" must exist.  Id.  Here, the IJ identified two issues with the evidentiary basis of Brotherton's expertise that justified giving reduced weight to his testimony:  His "knowledge, research, or connections in the Dominican Republic" were not (1) recent and (2) firsthand.  We address each in turn.

As to recency, the IJ concluded, in an opinion dated April 26, 2021, that Brotherton's expertise was stale because he had not been to the Dominican Republic since 2014 and had not spoken with a removed noncitizen in the Dominican Republic, or officials within the government, since 2019.  The IJ's factual findings as to when Brotherton last visited the Dominican Republic and conducted interviews are borne out by the record, however, the IJ's recency conclusion ultimately lacks support.

There is no evidence in the record that conditions in the Dominican Republic have changed since 2019 and, notably, the IJ cites no support for this assumption.  In fact, Brotherton testified that country conditions in the Dominican Republic have not changed significantly since 2014.  The IJ's conclusion is problematic given that Brotherton's testimony on this point went unchallenged -- the government did not call its own expert, nor was Brotherton's testimony contradicted by G.P. or other country conditions evidence.  Cf. Hang Chen v. Holder, 675 F.3d 100, 109 (1st Cir. 2012) (holding that the BIA properly rejected an expert's opinion where it was contradicted by country conditions evidence).

Because a reasonable factfinder would be compelled to reach a contrary conclusion based on the record, the IJ's recency justification for giving reduced weight to Brotherton's testimony cannot stand.  See Aguilar-Solis, 168 F.3d at 569 (requiring substantial evidence to uphold agency decisions); M-A-M-Z-, 28 I. & N. Dec. at 177 (stating an IJ's findings "without support . . . drawn from the facts in the record" constitutes error (quoting Matter of A-B-, 27 I. & N. Dec. 316, 341 (Att'y Gen. 2018), vacated, 28 I. & N. Dec. 307, 307 (Att'y Gen. 2021))).

The IJ also cited Brotherton's lack of firsthand "knowledge, research, or connections" in the Dominican Republic as justification for giving his testimony reduced weight.  While the Federal Rules of Evidence ("FRE") do not apply in immigration proceedings, the BIA regularly looks to the FRE for guidance on evidentiary issues -- including expert witness testimony.  See J-G-T, 28 I. & N. Dec. at 102 n.7 (declining to formally adopt FRE in immigration proceedings); Matter of Y-S-L-C, 26 I. & N. Dec. 688, 690 (B.I.A. 2015) (stating that "[i]t is well established that the [FRE] are not binding in immigration proceedings . . . [but] may provide helpful guidance").  With respect to experts, the BIA has said that "[a]n expert witness is broadly defined as someone who is 'qualified as an expert by knowledge, skill, experience, training, or education.'"  Matter of D-R-, 25 I. & N. Dec. 445, 459 (B.I.A. 2011) (quoting Fed. R. Evid.

702).   In contrast to a lay witness, who testifies based on personal perception, J-G-T, 28 I. & N. Dec. at 101, an expert witness "may testify in the form of an opinion," id. (quoting Fed. R. Evid. 702), and "need not have personal knowledge of the facts underlying those opinions," Matter of Vides Casanova, 26 I. & N. Dec. 494, 499 (B.I.A. 2015) (emphasis added).   The BIA has clarified that an expert's testimony is reliable when "'based on sufficient facts or data' that the expert 'has been made aware of or personally observed' or from sources that 'experts in the particular field would reasonably rely on.'"   J-G-T, 28 I. & N. Dec. at 102 (quoting Fed. R. Evid. 702(b), 703).

G.P. argues that, in concluding that Brotherton lacked firsthand "knowledge, research, or connections," the IJ not only overlooked evidence of Brotherton's firsthand expertise but also unjustifiably ignored the other sources of information that Brotherton relied on in forming his opinion. We agree.   First, Brotherton testified that he personally interviewed ten removed noncitizens in the Dominican Republic in 2014 (and interviewed over 100 removed noncitizens and over 50 police/immigration officials pre-2011).   While the IJ discounted these interviews as stale, as discussed supra, there is no basis in the record for concluding that conditions have changed since at least 2014. Regardless, Brotherton also testified that he had done informal interviews, as recently as 2019, with individuals in the Dominican

Republic and with government officials visiting the United States. He also described his work as a consultant on the Syndemics Project -- a removed noncitizen-related study, conducted by Florida International University -- based in the Dominican Republic. Between his affidavit and testimony, he explained that the project team interviewed approximately thirty removed noncitizens from 2015 to 2018, that he had access to all of their interviews, and that he remained in contact with the field research team who updated him on new data frequently. Contrary to the IJ's finding, there is substantial evidence in the record that would compel a reasonable factfinder to conclude that Brotherton relied on firsthand information in forming his opinion.

Moreover, in addition to firsthand knowledge, Brotherton testified about other sources of information that he relied on to form his opinion. During his voir dire, Brotherton explained that he maintained his knowledge of country conditions in the Dominican Republic by reviewing crime rates, DEA reports, and other official country reports. He referenced said reports throughout his testimony and affidavit, specifically citing to the U.S. Department of State's 2018 and 2019 Country Reports on Human Rights Practices in the Dominican Republic. The IJ failed to mention this evidence or otherwise explain why facts that Brotherton "has been made aware of," "personally observed," or gleaned from sources that "experts in the particular field would reasonably rely on,"

such as Department of State country reports, do not provide a
sufficient basis for crediting his testimony fully. See Fed. R.
Evid. 703 (outlining bases for expert opinions). This alone
constitutes error. See Rodríguez-Villar v. Barr, 930 F.3d 24, 28
(1st Cir. 2019) ("Although the agency is not required to discuss
every piece of evidence, it must, at a minimum, 'fairly appraise
the record' and 'cannot turn a blind eye to salient facts.'"
(quoting Sihotang v. Sessions, 900 F.3d 46, 51 (1st Cir. 2018)));
Gailius v. INS, 147 F.3d 34, 46-47 (1st Cir. 1998) (stating agency
must adequately explain its decision to discount relevant evidence
for meaningful appellate review); Castillo v. Barr, 980 F.3d 1278,
1283 (9th Cir. 2020) ("Where the [IJ or BIA] do[] not consider all
the evidence before it, . . . [by] 'failing to mention highly
probable or potentially dispositive evidence,' its decision
cannot stand." (quoting Cole v. Holder, 659 F.3d 762, 772 (9th
Cir. 2011))). Nevertheless, even had the IJ discussed these
additional bases for Brotherton's opinion, our review of the record
convinces us that the IJ's decision to give Brotherton's testimony
limited weight is not supported by substantial evidence and must
be vacated.

### B. Discounting Brotherton's Opinion on G.P.'s Risk

In addition to challenging the limited weight given to
Brotherton's testimony, G.P. contends that the IJ's and BIA's other
justifications for discounting Brotherton's opinion -- that G.P.

faced a "high risk" of torture -- are not supportable.  The IJ explained his decision by citing Brotherton's lack of familiarity with the Martinez Group, its connections in the Dominican Republic, and Brotherton's agreement with a quote from his 2011 book saying that removed noncitizens should not necessarily expect torture. The BIA adopted the IJ's findings and affirmed his rejection of Brotherton's expert opinion as to G.P.'s risk.

An IJ is not required to accept an expert's opinion as fact just because the expert testifies credibly.  M-A-M-Z-, 28 I. & N. Dec. at 177.  Nevertheless, "when the [IJ] makes a factual finding that is not consistent with an expert's opinion, it is important . . . to explain the reasons behind the factual findings." Id. at 177-78; cf. H.H. v. Garland, 52 F.4th 8, 23-24 (1st Cir. 2022) (vacating and remanding BIA decision after concluding agency failed to adequately articulate its reasoning on non-expert issue).  As outlined supra, the IJ's findings of fact are subject to substantial evidence review.  Romilus, 385 F.3d at 5.

The IJ's findings as to Brotherton's direct knowledge of the Martinez Group are supported by the record, however, the IJ's justification for discounting his opinion on that basis is not. Here, Brotherton testified that he had no direct knowledge of the Martinez Group, its operations in New England, or its connections to officials in the Dominican Republic.  Nevertheless, the IJ

faulting his lack of personal knowledge is problematic for two reasons. First, as discussed <u>supra</u>, an expert "<u>need not</u> have personal knowledge of the facts underlying" their opinion, <u>Vides Casanova</u>, 26 I. & N. Dec. at 499, which may be deemed reliable as long as it is based on "sufficient facts or data," <u>J-G-T</u>, 28 I. & N. Dec. at 102 (quoting Fed. R. Evid. 702(b), 703). Brotherton relied on G.P.'s affidavit to learn specifics about the Martinez Group, its connection to cartels, and to form an opinion as to G.P.'s risk of torture as a government cooperator. Notably, the facts contained within G.P.'s affidavit, and later admitted through his testimony, were never challenged by the government or questioned by the IJ, who found G.P. credible. An expert cannot be "undermined by his reliance on facts . . . that have not been disputed." <u>See</u> <u>Castillo</u>, 980 F.3d at 1284. Therefore, Brotherton was entitled to rely on G.P.'s affidavit, and his opinion should not have been disregarded because he did so.

Second, Brotherton's lack of personal knowledge about the Martinez Group should not have devalued his opinion because the IJ qualified him as an expert on country conditions in the <u>Dominican Republic</u>. Here, the record is clear that the Martinez Group was a New England-based drug trafficking organization. It is possible that the IJ may have been trying to suggest that, as an expert on organized crime in the Dominican Republic, Brotherton's lack of knowledge about the Martinez Group's

operations means that the group does not have a strong presence
there, however, we are not permitted to engage in such judicial
guesswork, see Ojo v. Garland, 25 F.4th 152, 157 (2d Cir. 2022),
and such reasoning impermissibly ignores evidence in the record,
see Baharon v. Holder, 588 F.3d 228, 233 (4th Cir. 2009) ("It
is . . . our responsibility to ensure that unrebutted, legally
significant evidence is not arbitrarily ignored by the
factfinder."). G.P.'s affidavit and testimony explained that the
Martinez Group is connected to the Sinaloa Cartel (a Mexican drug
cartel) because the latter supplies fentanyl to the former. This
connection is corroborated by a DEA press release discussing an
intercepted call between Martinez and a fentanyl supplier in
Sinaloa, Mexico and describing Martinez as "running a
sophisticated marketing operation that served as a conduit between
the Mexican drug cartels and customers in Northern New England."
Brotherton's testimony and affidavit described the Sinaloa
Cartel's strong presence in the Dominican Republic, influence over
government officials there, and treatment of government
cooperators. The IJ citing Brotherton's lack of direct knowledge
of the Martinez Group, or its connections to the Dominican
Republic, while factually accurate, mischaracterizes the evidence
as a whole and leads us to conclude that substantial evidence does
not support the IJ's decision to disregard Brotherton's opinion on

this basis.   See Cole, 659 F.3d at 772 (concluding that a misstatement of the record by the IJ or BIA is error).

The IJ also cited Brotherton's agreement with a quote from his 2011 book as a basis for dismissing Brotherton's opinion that G.P. faced a high risk of torture from corrupt police/private actors hired by the Martinez Group.  The quote, which was submitted by the government, states:  "I did my best to paint a picture that fitted this scenario but I couldn't honestly say that torture is something deportees should expect."  Far from agreeing with said quote, Brotherton qualified its applicability to G.P.'s proceedings by explaining that in the book's context, torture had a very narrow definition -- for example, tying electrodes to someone's testicles -- and that the book pertained to another individual's particular circumstances who, unlike G.P., had mental health issues and had not cooperated against a criminal organization.  The IJ's characterization of Brotherton as having "agreed with a quote from his book" on cross-examination is troubling since he was only asked on direct examination whether he recalled the quote and to explain its context, not whether he agreed with it or if it was still accurate.  Additionally, we fail to find support in the record for the level of emphasis that the IJ placed on the quote.  Reviewing Brotherton's testimony and the exhibit with the book excerpt in full, it is clear that the quote was cited as a basis for disregarding G.P.'s risk of torture from

private citizens/corrupt police, but Brotherton wrote these words about the risk of torture removed noncitizens face generally. Further, the IJ failed to explain why the quote from the 2011 book deserved significant weight when it was substantially older than other evidence the IJ disregarded as stale.

### V. Conclusion

For the foregoing reasons, we conclude that the BIA's decision affirming the IJ's analysis, which gave limited weight to Brotherton's testimony and rejected his opinion regarding G.P.'s risk of torture, is not supported by substantial evidence in the record. Given the IJ's unjustifiable rejection of Brotherton's testimony, which pertained to both of G.P.'s theories of torture (his risk of harm as a removed criminal and as a government cooperator against the Martinez Group), and in light of the CAT requirement that "all evidence relevant to the possibility of future torture shall be considered," 8 C.F.R. § 1208.16(c)(3), the IJ's and BIA's decisions cannot stand. Therefore, we **grant** G.P.'s petition for review, **vacate** the BIA's decision, and **remand** to the BIA, with directions to remand to the IJ, for further consideration of G.P.'s CAT claim consistent with this opinion. In deciding whether G.P. is entitled to relief on remand, Brotherton's testimony should be afforded full weight, and, although we take no position on them, we encourage the IJ to review the other issues raised in G.P.'s petition.